UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-14010-ADB |
| | * | |
| XTRA INTERMODAL, INC., et al., | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER
ON DEFENDANTS' MOTION TO TRANSFER VENUE**

July 15, 2015

BURROUGHS, D.J.

Before the Court is a Motion to Transfer Venue filed by four Defendants: XTRA Intermodal, Inc.; X-L-Co., Inc.; XTRA Corporation; and XTRA LLC (collectively, the "XTRA Defendants"). These Defendants argue that the Southern District of Illinois is a more appropriate and convenient venue for litigating this insurance coverage dispute, and that transfer would serve the interests of justice. For the reasons set forth herein, the XTRA Defendants' Motion is granted, and this litigation will be transferred to the Southern District of Illinois for further proceedings.

I.   **FACTS AND PROCEDURAL HISTORY**

This case involves an insurance coverage dispute arising out of the environmental cleanup of a Superfund site known as the "Old American Zinc Plant" in Fairmont City, Illinois (the "Site"). Between approximately 1916 and 1967, the Site was owned by the American Zinc Company, which conducted smelting operations on the property [Second Amended Complaint ¶¶ 17-19, ECF No. 6]. These operations produced slab zinc, zinc oxide, zinc carbonate, cadmium, lead, and sulfuric acid, some of which allegedly contaminated the Site [Id. ¶¶ 19, 24]. From 1967

1

to 1976, the Site was unoccupied [Id. ¶ 20]. In 1976, Defendant XTRA Intermodal leased the Site, using it to store semi-trailer trucks. XTRA Intermodal eventually purchased the Site in 1992 [Id. ¶¶ 21-22]. Since the 1990s, the Site has been investigated by both the United States Environmental Protection Agency ("U.S. E.P.A.") and the Illinois Environmental Protection Agency ("Illinois E.P.A.") [Id. ¶ 23]. In 2012, the U.S. E.P.A. issued a Record of Decision setting forth a pollution remediation plan for the Site [Id. ¶¶ 24-25].

In 2013, the Blue Tee Corporation, successor to the American Zinc Company, filed a civil action against XTRA Intermodal and the other XTRA Defendants[1] in the U.S. District Court for the Southern District of Illinois (the "Blue Tee Litigation") [Id. ¶ 14; see also Blue Tee Corp. v. XTRA Intermodal, Inc., No. 3:13-cv-00830-DRH (S.D. Ill.)]. Blue Tee Corporation seeks contribution from the XTRA Defendants for costs that it has incurred – or will incur – in performing response, investigation, and remedial activities at the Site [Second Amended Complaint ¶ 15].

When the Blue Tee Litigation was filed, the XTRA Defendants requested that Plaintiff Federal Insurance Company ("Federal") provide a defense to the suit, pursuant to various policies of liability insurance that Federal issued to XTRA Corporation in the 1980s and 1990s [Id. ¶ 26].[2] Although Federal has "agreed to participate" in the defense of the Blue Tee Litigation, it has reserved all rights with respect to whether and to what extent it may have a duty to defend and/or provide coverage [Id. ¶ 40]. In particular, Federal notes that the coverage

---

[1] Defendants XTRA Intermodal, Inc. and X-L-Co. are subsidiaries of Defendant XTRA LLC. In turn, XTRA LLC is a subsidiary of non-party XTRA Companies, Inc. The Defendant XTRA Corporation is the parent company of XTRA Companies, Inc. [Declaration of Michael Dreller ¶ 8 [ECF No. 29-2].

[2] In addition to a primary insurance policy that remained in effect from 1984 to 1989, Federal also issued to XTRA Corporation several layers of excess liability policies in effect between 1986 and 1998. [Second Amended Complaint ¶¶ 26-31].

provided by the policies was subject to various exclusions. For example, the policy in effect between 1984 and 1986 allegedly contained an exclusion for injury or damage arising out of the discharge of contaminants or pollutants into or upon land, the atmosphere, or water, but further stated that such exclusion would not apply if the discharge was "sudden and accidental." [Id. ¶ 37]. Federal alleges that beginning in 1985, this exclusion was superseded by an "absolute" pollution exclusion, which contained no exception for sudden and accidental discharges [Id. ¶¶ 38-39]. Federal's position is that these exclusions apply to the pollution occurring at the Site, and that consequently, Federal is not obligated to defend or indemnify the XTRA Defendants in connection with the underlying Blue Tee Litigation.

To resolve this coverage dispute, Federal filed a Complaint for Declaratory Relief with this Court on October 28, 2014, seeking a judicial determination of the parties' respective rights and responsibilities under the insurance policies [ECF No. 1]. Federal filed an Amended Complaint on December 8, 2014 [ECF No. 5], and a Second Amended Complaint on December 12, 2014 [ECF No. 6]. Federal seeks a declaration that it has no duty to defend or indemnify the XTRA Defendants in connection with the Blue Tee Litigation, on the grounds that such losses are excluded by the policies at issue [Second Amended Complaint ¶¶ 50-56]. Alternatively, if Federal is determined to owe coverage, Federal seeks a judicial declaration that its obligations are restricted to its "time on the risk," and that all damages and costs of defense should be allocated amongst all of the XTRA Defendants' insurers, on a "time on the risk" basis [Id. ¶¶ 57-60]. Accordingly, Federal's Second Amended Complaint names, in addition to the XTRA Defendants, five other insurance companies who allegedly issued liability insurance to one or more of the XTRA Defendants. Those insurer defendants are (1) American Insurance Company;

(2) Arrowood Indemnity Company; (3) Associated Indemnity Company; (4) Fireman's Fund Insurance Company; and (5) Providence Washington Insurance Company.

## II.  VENUE

Federal contends, and defendants do not dispute, that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). Federal alleges that at the time it issued the primary and excess insurance policies to the XTRA Corporation, the XTRA Corporation's headquarters were located in Boston, Massachusetts [Second Amended Complaint ¶ 32]. In addition, some the policies were brokered by insurance agencies located within the Commonwealth of Massachusetts [Id. ¶¶ 32-33]. Thus, this judicial district is a district in which "a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b)(2).

Those insurance policies, however, were issued more than twenty years ago, and there do not appear to be any modern-day connections linking the parties to the Commonwealth of Massachusetts. The XTRA Corporation moved its principal executive office out of Boston in 1999. Between 1999 and 2004, XTRA Corporation's principal offices were located in Connecticut. Since 2004, they have been located in Clayton, Missouri, which is a suburb of St. Louis [Declaration of Michael Dreller ¶ 7, ECF No. 29-2]. XTRA Corporation, X-L-Co., and XTRA Intermodal are all Delaware corporations with principal places of business in Clayton, Missouri. XTRA LLC is a Maine corporation, also with a principal place of business in Clayton, Missouri [Id. ¶¶ 2-14]. Therefore, it appears that the XTRA Defendants' corporate officers and corporate records are now located in the St. Louis area [Id. ¶¶ 10-11]. The other insurer defendants are headquartered in various locations across the United States, although none in Massachusetts.[3] Plaintiff Federal is an Indiana corporation headquartered in Warren, New Jersey

---

[3] American Insurance Company is an Ohio corporation with headquarters in Novato, California. Arrowood Indemnity Company is a Delaware Corporation with headquarters in Charlotte, North

[Second Amended Complaint ¶ 1]. Therefore, apart from the fact that some of the operative insurance policies were issued in Massachusetts in the 1980s and 1990s, there is no obvious connection between the parties' dispute and this judicial district.

In support of their motion to transfer venue, the XTRA Defendants argue that this case should be transferred to the Southern District of Illinois, where the Blue Tee Litigation is pending and the contaminated Site is located. The XTRA Defendants note that in addition to being a more convenient, centrally-located venue for the majority of the parties, the federal courthouse in the Southern District of Illinois is located 6 miles from the Site, and that the witnesses and documents at issue in this case are more likely to be situated in Illinois or nearby St. Louis, Missouri. In support of this argument, the XTRA Defendants have identified a number of potential witnesses who may need to testify in this case, and who are located in the Illinois area.[4] These witnesses include a former employee of a third-party construction company located in Fairmont City, Illinois, who allegedly has knowledge about the movement of materials on the Site and has not given live testimony in the Blue Tee Litigation [ECF No. 66 ¶ 4(B)]. Another potential witness is a former XTRA Intermodal employee currently residing in Kansas City, Missouri, who allegedly has knowledge of XTRA Intermodal's operations at the Site [Id. ¶ 4(C)]. In addition to these non-party witnesses, the XTRA Defendants have identified certain

---

Carolina. Associated Indemnity Company, and Fireman's Fund Insurance Company are both California corporations with headquarters in Novato, California. Providence Washington Insurance Company is a Rhode Island corporation with headquarters in Rhode Island [ECF no. 29 p. 7].

[4] These allegations are set forth in the Declaration of Steven J. Poplawski, outside counsel for the XTRA Defendants, who has knowledge of the underlying Blue Tee Litigation, and who is familiar with the insurance coverage matters alleged in this case [ECF No. 66].The Poplawski Declaration was originally attached as Exhibit A to the XTRA Defendant's Combined Reply Brief [ECF No. 56-1]. The XTRA Defendants submitted a Corrected Declaration on May 20, 2015 [ECF No. 66]. In this Memorandum and Order, all references to the Poplawski Declaration refer to the Corrected version [ECF No. 66].

corporate officers of the XTRA Corporation, and potential expert witnesses, who are located in either St. Louis or Chicago. According to the XTRA Defendants, these witnesses have knowledge about whether XTRA released any pollution on the Site, when such pollution was released, and whether or not that release was intentional, or sudden and accidental [Id. ¶¶ 4(A), 4(D), 5]. Further, the XTRA Defendants have identified five representatives from the U.S. E.P.A. and the Illinois E.P.A., all of whom are located in Illinois, who have knowledge of the Site's investigation and remediation [Id. ¶ 6].

Finally, the XTRA Defendants argue that venue should be transferred because the State of Illinois has a strong interest in the adjudication of this coverage dispute, to ensure that funds are available for the clean-up of the contaminated Site and to protect the health and welfare of its residents. They contend that Massachusetts has no genuine interest in the resolution of an insurance coverage dispute between foreign parties regarding the clean-up of property in Illinois, and that Federal was forum shopping when it chose to file this action in this judicial district [ECF No. 29, pp. 5, 13]. The XTRA Defendants believe that by filing in Massachusetts, Federal is attempting to secure the application of Massachusetts law – specifically, state law regarding the "sudden and accidental" exception to the pollution exclusion contained in the insurance policies [Id. p. 13].

Defendant Arrowood Indemnity Company ("Arrowood") supports the XTRA Defendants' Motion to Transfer, citing substantially similar reasons [ECF No. 48]. Arrowood concurs that "whether and how" its policies provide coverage "will depend in part upon what activities took place at the Illinois site" during the years that its policies were in effect [Id. p. 2]. It notes that documents, physical evidence, and witnesses relating to these factual questions "are expected to be located in close proximity to [the Site]." [Id.].

6

The other four insurer defendants, however, oppose the XTRA Defendants' efforts to transfer this action. The American Insurance Company, Associated Indemnity Corporation, and Fireman's Fund Insurance Company have filed a consolidated Opposition to the Motion to Transfer [ECF No. 49]. Providence Washington Insurance Company filed a separate Opposition [ECF No. 46], as did the Plaintiff, Federal [ECF No. 47]. Federal and the other insurer defendants argue that Boston is a more convenient and appropriate venue to litigate this coverage dispute. In its Opposition, Federal notes that a plaintiff's choice of forum is entitled to considerable deference. The parties opposing transfer also dispute the XTRA Defendants' claim that this case will require documents, live witnesses, and other evidence located in Illinois. Rather, Federal argues that "this is a documents case," which will hinge on the interpretation of insurance contracts issued to a Massachusetts company and brokered through Massachusetts insurance agents [ECF No. 47-1 p. 10]. Federal notes that even assuming witnesses and evidence were necessary, the pollution in question occurred so long ago that there are unlikely to be any remaining witnesses with percipient knowledge [Id.]. In addition, Federal insists that there is a strong connection between Massachusetts and the insurance policies at issue. Specifically, Federal argues that where Massachusetts law will ultimately govern the interpretation of the insurance policies, Massachusetts has a "significant interest" in ensuring that the policies are "properly construed in accordance with Massachusetts law." [Id. pp. 2, 13-17]. Federal also suggests that the XTRA Defendants have overstated Illinois' interest in resolving this coverage dispute, because the case will only determine who is liable to pay for the clean-up costs, not whether the clean-up will occur [Id. p. 13].

The Court held a hearing on the XTRA Defendants' Motion to Transfer on April 29, 2015 [ECF No. 59]. On June 17, 2015, the XTRA Defendants submitted an additional

Declaration in support of their Motion, which states that in May 2015, XTRA Intermodal received a Notice Letter from the U.S. E.P.A., Region 5, located in Chicago, Illinois, seeking reimbursement from XTRA Intermodal for the costs the E.P.A. has incurred in responding to environmental releases at the Site [Additional Declaration of Steven J. Poplawski ¶ 4, ECF No. 69]. In June 2015, XTRA Intermodal received a similar letter from the Illinois Department of Natural Resources and the Illinois E.P.A., both located in Springfield, Illinois, seeking a resolution of certain "natural resource damage claims" related to the Site [Id. ¶ 5]. Therefore, it appears that this coverage dispute could potentially involve claims beyond those alleged in the Blue Tee Litigation, and that such claims may involve governmental agencies and offices located in the State of Illinois.

### III.   DISCUSSION

#### A.  Legal Standard

Transfer of venue to a different judicial district is governed by 28 U.S.C. § 1404(a), which provides that a district court may transfer a civil action to any other district or division where it might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404 "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). The burden of establishing grounds for transfer rests with the moving party, and there is a "strong presumption in favor of the plaintiff's choice of forum." Id. at 13 (quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000)).

When considering a motion to transfer venue, courts consider both private and public interest factors, including "1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake." Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2012); see also Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 n.6 (2013) (reviewing the private and public interest factors relevant to transfer decisions).

### B. Analysis

As a threshold matter, the parties do not dispute that this action "might have been brought" in the Southern District of Illinois. See 28 U.S.C. § 1404(a).[5] Therefore, the Court's analysis will focus on whether the XTRA Defendants have met their burden of establishing grounds for transferring venue in light of the various private and public interest factors set forth above.

#### 1. Plaintiff's Choice of Forum

Traditionally, courts give substantial deference to a plaintiff's choice of forum. Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992). "However, the weight to be accorded plaintiff's choice of forum varies with the circumstances of the case." Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987). For example, when the plaintiff is not bringing suit on its "home turf," or the operative events did not occur in the forum state, the plaintiff's choice of forum is accorded less weight. See id.; see also Transamerica Corp. v. Trans-Am. Leasing Corp., 670 F. Supp. 1089, 1093 (D. Mass. 1987).

---

[5] See XTRA Defendants' Memorandum in Support of Motion to Transfer, ECF No. 29, at pp. 9-10 (explaining why this action could have been filed in the Southern District of Illinois).

Federal is an Indiana corporation currently headquartered in Warren, New Jersey [ECF No. 6, ¶ 1]. Although Federal is licensed to write business in the Commonwealth of Massachusetts, it does not appear that Federal has filed suit on its "home turf," as that phrase is generally understood.  Nonetheless, some of the operative events giving rise to this lawsuit did occur in Massachusetts. In support of keeping this insurance coverage dispute in Massachusetts, Federal notes that when it issued the insurance policies to the XTRA Corporation in the 1980s, the XTRA Corporation was headquartered in Boston, Massachusetts; that the policies themselves were brokered in Massachusetts [Id. ¶ 33]; and that they were issued to the XTRA Corporation at its Boston headquarters [Id. ¶ 32]. Therefore, this judicial district does bear some connection to the litigation, and it is the forum chosen by Federal, the Plaintiff. But although Federal's choice of forum is entitled to some deference, it is not dispositive. "Although courts generally give presumptive weight to the plaintiff's choice of forum, this presumption may give way to other overriding considerations." Karmaloop, Inc. v. ODW Logistics, Inc., 931 F. Supp. 2d 288, 290 (D. Mass. 2013).

### 2. Convenience of the Parties

The parties in this case are all business entities, with places of incorporation and headquarters scattered throughout the country. Although several of the insurers (including Federal) are licensed to do business in the Commonwealth, no party is incorporated in or currently has its principal headquarters in Massachusetts. The XTRA Defendants have submitted the following chart setting forth the domiciles of the various parties:

| Entity | State of Incorporation or Organization | Headquarters/ Principal Place of Business |
|---|---|---|
| XTRA Corporation | Delaware | Clayton, MO |
| XTRA LLC | Maine | Clayton, MO |
| X-L-Co. | Delaware | Clayton, MO |
| XTRA Intermodal | Delaware | Clayton, MO |
| Federal Insurance Co. | Indiana | Warren, NJ |
| The American Insurance Co. | Ohio | Novato, CA |
| Arrowood Indemnity Co. | Delaware | Charlotte, NC |
| Associated Indemnity Co. | California | Novato, CA |
| Fireman's Fund Insurance Co. | California | Novato, CA |
| Providence Washington Ins. Co. | Rhode Island | Warwick, RI |

[ECF No. 29 p. 7].

A total of five defendants (the XTRA Defendants, and Arrowood Indemnity Company) favor transfer to the Southern District of Illinois. The remaining five parties (Plaintiff Federal and the other insurer defendants) oppose transfer. Although it may be significantly more convenient for the XTRA Defendants, headquartered in Missouri, to litigate this action in nearby Illinois, it would be less convenient for parties such as Federal and Providence Washington, who are headquartered in New Jersey and Rhode Island, respectively. No party has argued that it lacks the financial means to litigate in either forum. Given the wide range of geographic locations and the divergent preferences of the parties, the Court finds that the private convenience factor does not weigh strongly in favor of transfer. "The presumption in favor of a plaintiff's choice of forum renders transfer inappropriate where its effect is merely to shift the inconvenience from one party to the other." Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (internal quotations and citation omitted).

### 3. Convenience of the Witnesses and Location of Evidence

Courts have noted that of all the factors considered in a change-of-venue motion, "the convenience of expected witnesses is probably the most important factor, and the factor most

11

frequently mentioned." Boateng, 460 F. Supp. 2d at 275 (internal quotations and citation omitted).

> In considering this factor, the court looks at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." [] "A party seeking transfer on this basis must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail."

Id. at 275 (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)).[6]

At this early stage of the litigation, it is somewhat difficult to predict whether and to what extent resolution of the coverage issues will involve witnesses or other evidence located near the Site in Illinois. A brief review of Federal's Second Amended Complaint suggests that the key issues are (1) whether, under the 1984-1985 Federal Primary Insurance policy, the pollution at the Site was excluded from coverage, or not excluded by reason of being "sudden and accidental;" (2) whether, under the subsequent Federal Primary Insurance policies, the pollution at the Site fell under the "absolute pollution exclusion" in the policies; and (3) whether and to what extent the other insurer defendants are liable for the same losses under the terms of their respective policies.

It is unlikely that the Court will be able to resolve these issues solely by interpreting the language of the insurance contracts. To some extent, coverage may depend on the factual circumstances surrounding the operations and pollution at the Site. See Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 308 (D.N.J. 1989) ("Environmental coverage claims

---

[6] Although courts traditionally analyzed whether the key "documents" at issue in a case were likely to be located in the forum state or in the transferee state, this factor has lost some of its gravitas in the age of e-discovery. See Boateng, 460 F. Supp. 2d at 276. Thus, the Court's analysis will focus primarily on the location of key witnesses, whose deposition and trial testimony may be more expensive and difficult to procure.

cannot be decided in a vacuum; they require investigation into site-specific facts and cannot be decided merely by reference to the terms of the insurance policy."); Inter-City Prods. Corp. v. Ins. Co. of N. Am., No. 90-717-SLR, 1993 WL 18948, at *7 (D. Del. Jan. 26, 1993) ("in actions seeking insurance coverage for defense and remediation costs arising from environmental damage, factual aspects of the underlying environmental incidents frequently are of considerable or greatest significance in determining whether a pollution exclusion clause or other contract provision precludes coverage"); accord Pennsylvania Mfrs. Ass'n Ins. Co. v. Federal Realty Inv. Trust, No. 98-3969, 2000 WL 964771, at *3-*4 (D. Md. June 6, 2000) (allowing motion to transfer to situs of the polluted property); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 635 (W.D. Mich. 2009) (same).

Further, the XTRA Defendants have persuasively argued that live witness testimony will be necessary and helpful in resolving these key issues. They have specifically named two non-party witnesses and one XTRA employee who have percipient and/or historical knowledge of the alleged pollution on the Site. Those witnesses are all located in the Illinois/Missouri area. See Cincinnati Ins. Co., 676 F. Supp. 2d at 635 (allowing motion to transfer environmental insurance coverage case, and noting that the convenience of non-party witnesses is paramount). In addition, XTRA has identified an expert witness in Chicago, Illinois who has provided testimony regarding the environmental conditions at the Site, and who may be required to testify in this litigation. Furthermore, the XTRA Defendants' most recent submissions suggest that this coverage dispute is increasingly likely to involve additional remediation matters currently pending before the U.S. E.P.A.'s Chicago Office, as well as the Illinois E.P.A.

In sum, the XTRA Defendants have established that witnesses, documents, and other evidence are far more likely to reside in Illinois or Missouri than in Massachusetts. Thus, this factor weighs in favor of transferring venue to the Southern District of Illinois.

### 4. Connection Between the Forum and the Issues in Dispute

When Federal issued its insurance policies to the XTRA Corporation, XTRA was headquartered in Boston, Massachusetts, and the insurance policies were brokered through Massachusetts-based insurance agents. Thus, there is clearly a connection between the Commonwealth of Massachusetts and the insurance policies at issue. However, this connection has substantially weakened over time, given how long ago the policies were negotiated and issued, and the fact that the XTRA Defendants' principal offices were relocated from Boston more than 15 years ago [See Dreller Declaration, ECF No. 29-2]. The companies' relocation, and the passage of time, make it unlikely that any documents or witnesses relating to the insurance policies remain in the Commonwealth. Notably, although the XTRA Defendants have identified certain Illinois-based witnesses by name, Federal has not responded by naming any likely witnesses or other evidence located here within the Commonwealth. And although Federal points out that the relevant policies were brokered and issued in Massachusetts, it does not adequately explain why this fact is relevant to the legal issues in dispute in this case, other than to argue that Massachusetts law should govern the interpretation of the policies.[7]

This suit has a stronger, more immediate, and more relevant connection to the Southern District of Illinois. The underlying Blue Tee Litigation that gives rise to this coverage dispute is already being litigated within that judicial district. Further, the Illinois E.P.A. in Springfield, and the U.S. E.P.A. in Chicago have recently taken actions that are likely to produce additional

---

[7] The governing law argument will be addressed separately in Section 5, infra.

14

insurance claims relating to the Site. The Site itself is located a mere 6 miles from the courthouse in the Southern District of Illinois. Where the interpretation and application of the insurance policies will likely depend, at least in part, on the factual circumstances surrounding the environmental pollution, the Court finds that the issues in dispute have a stronger connection to the Southern District of Illinois than to the District of Massachusetts. This factor also weighs in favor of transfer.

### 5. The Law to be Applied

Although Federal argues that the insurance policies it issued to the XTRA Corporation are subject to Massachusetts law, and that this fact further supports maintaining venue in Massachusetts, the XTRA Defendants dispute Federal's contention regarding the governing law,[8] and they further argue that it would be premature to determine choice of law at this stage of the litigation. The Court agrees. The choice-of-law question is determined by a multi-factor analysis, see generally National Union Fire Ins. Co. v. Mead Johnson & Co., No. CIV.A. 11-10042-NMG, 2011 WL 6148656, at *13 (D. Mass. Dec. 8, 2011), which has not been fully briefed by the parties. Nor does the Court have the benefit of a fully developed factual record on this point.[9] Where it is not yet clear that Massachusetts law will govern the interpretation of the underlying policies, the Court declines to assign substantial weight to this factor. See Cincinnatti Ins. Co., 676 F. Supp. 2d at 638-39 (declining to attach significant weight to governing law

---

[8] Although the XTRA Defendants have not briefed the choice-of-law issues, it is their position that Illinois law governs the insurance contracts at issue [ECF No. 29 p. 16 n.2].

[9] At this point, the record does not even contain clear and complete copies of the insurance policies in question. The XTRA Defendants have included copies of the declarations pages of these policies, which are attached as Exhibit B to the Declaration of Michael Dreller. [ECF No. 29-2, Exhibit B]. These documents, however, are partially illegible, and it is not clear whether the policies contain a governing-law clause.

factor, where issue had not been fully briefed or decided by a court); Mead Johnson & Co., 2011 WL 6148656, at *13-14 (same).[10]

Furthermore, even assuming that Massachusetts law governs this dispute, the applicable law factor is also not dispositive. Although judicial familiarity with local law may be relevant to a change-of venue analysis, "it is given significantly less weight . . . when the case involves basic or well-established, as opposed to complex or unsettled, issues of state law . . . ." 15 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 3854 (4th ed.). Neither Federal nor any other party opposing transfer has persuasively argued that the insurance coverage issues in this case are so complex, or that Massachusetts law is so unsettled, that a district court in Illinois is not equipped to apply that law to this dispute. Cf. Island View Residential Treatment Ctr., Inc. v. Bluecross Blueshield of Massachusetts, Inc., No. CIV A 07-10581-DPW, 2007 WL 4589335, at *8 (D. Mass. Dec. 28, 2007) (rejecting the notion that Massachusetts district courts are better positioned to apply Massachusetts law than other district courts, finding it "not compelling as a general proposition"); Paragon Realty Grp. LLC v. Lecates, No. 306CV846CFD, 2007 WL 419617, at *4 (D. Conn. Feb. 5, 2007) (holding that even assuming Florida law governed the dispute, "this factor on its own is not decisive as federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State") (internal quotations and citation omitted). Therefore, even if Massachusetts law applies, this

---

[10] Although the Court will leave the choice-of-law question to the transferee court, it notes that a change of venue should not affect the choice-of-law analysis, regardless of which court decides the question. In a diversity case, once venue is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the choice-of-law rules of the state where the action was originally filed. See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (holding that the transferee court is obligated to apply the state law that would have been applied if there had been no change of venue); CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 962 F.2d 77, 80 (1st Cir. 1992), as amended on denial of reh'g (May 13, 1992).

factor weighs only "slightly" in favor of maintaining the action in this judicial district. See Hawley v. Accor N. Am., Inc., 552 F. Supp. 2d 256, 261 (D. Conn. 2008).

### 6. The State or Public Interests at Stake

The XTRA Defendants argue that "Illinois has a paramount interest in the resolution of this matter," because the clean-up of the Fairmont Site, and the protection of Illinois residents and land, involve important Illinois state interests [ECF No. 29 pp. 15-16]. Federal, however, contends that this improperly conflates the underlying cleanup, and the Blue Tee Litigation, with this insurance coverage dispute. Federal argues that any interest Illinois may have in remedying the pollution on the Site does not extend to deciding who should bear the cost of that remediation, or whether the XTRA Defendants' insurance carriers are required to provide coverage [ECF No. 47-1 p. 13]. This argument is not persuasive. Courts have recognized that the host state has a "paramount interest in the remediation of toxic waste sites, which extends to assuring that casualty companies fairly recognize the legal liabilities of their insureds." Pennsylvania Mfrs. Ass'n Ins. Co. v. Fed. Realty Inv. Trust, No. CIV. A. DKC 98-3969, 2000 WL 964771, at *4 (D. Md. June 6, 2000) (quoting Gilbert Spruance Co. v. Pennsylvania Mfrs. Assoc. Ins. Co., 629 A.2d 885, 891 (N.J. 1993)).

Further, Illinois' state interest in the remediation of toxic waste sites far outweighs any interest that the Commonwealth of Massachusetts may have in adjudicating this action. Although Federal argues that Massachusetts has a countervailing interest in ensuring that insurance contracts issued to Massachusetts-insureds "are interpreted fairly and in accordance with Massachusetts law," [ECF No. 47-1, p. 2], this argument hinges on the assumption that Massachusetts law will apply to the policies – an issue that the Court declines to resolve at this juncture. Federal's interest argument is also weakened by the fact that the XTRA Defendants are

no longer Massachusetts-based companies. Although Massachusetts may have an interest in the fair enforcement and interpretation of insurance policies negotiated and issued in Massachusetts, that interest is diluted where the coverage dispute does not involve any Massachusetts-based companies or property. On the whole, the state or public interest factor favors transfer to the Southern District of Illinois, because Illinois has a significant interest in the proper resolution of a coverage dispute relating to the cleanup of polluted property within its borders.

### IV.    CONCLUSION

For the foregoing reasons, the Court finds that the XTRA Defendants have met their burden of demonstrating that this action should be transferred to the Southern District of Illinois, for the convenience of parties and witnesses, and in the interest of justice. See 28 U.S.C. § 1404(a). The public and private interest factors, on the whole, weigh in favor of transfer, and the XTRA Defendants' Motion to Transfer Venue [ECF No. 29] is therefore **ALLOWED**. This action will be transferred to the Southern District of Illinois for further proceedings.

**SO ORDERED.**

Dated: July 15, 2015

/s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
DISTRICT JUDGE